# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

DANETTE Z.,[1]

                                        Plaintiff,

          v.                                        1:19-CV-1273
                                                    (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

HOWARD D. OLINSKY, for Plaintiff
MICHAEL L. HENRY, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for both Disability Insurance Benefits ("DIB") on December 28, 2016, and Supplemental Security Income ("SSI") on December 29, 2016, alleging disability beginning August 1, 2016. (Administrative Transcript ("T.") 375-76, 478-92). These applications were initially denied on March 21, 2017. (T. 409-24). Plaintiff made a timely request for a hearing, which was held on May 8, 2018 before

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

Administrative Law Judge ("ALJ") Andrew J. Soltes, Jr.  (T. 308-55).  At the hearing, the ALJ heard testimony from plaintiff as well as vocational expert ("VE") Jody Plant.  (*Id.*).  On September 24, 2018, ALJ Soltes issued an unfavorable decision.  (T. 13-27).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on August 16, 2019.  (T. 1-4).

## II.   **GENERALLY APPLICABLE LAW**

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity
> that he is not only unable to do his previous work but  cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be hire
> if he applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which

2

significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

3

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>FACTS</u>

Plaintiff was born on June 12, 1966, making her 51 years old at the time of the administrative hearing.  (T. 313).  She was single with two adult children, and lived with a roommate who occasionally provided her financial support.  (T. 313-14).  Plaintiff had a driver's license, and could drive to the grocery store and doctor appointments.  (T. 316).  Plaintiff was most recently employed as a deli assistant at a local grocery store.  (T. 318).  She previously worked as a hairdresser and a flight attendant.  (T. 318-20).

4

Plaintiff injured her low back when she fell in her home in 2016. (T. 344-45). As a result, she was limited in her ability to stand for long periods of time, bend, stretch, kneel, and lift. (T. 321). She took a variety of medications for her pain, and sometimes used a cane to get around. (T. 323-24). In addition, plaintiff used a shower seat and a TENS unit at home. (T. 325). Plaintiff testified that she could not pick up her ten-pound therapy dog. (T. 326, 337). She could sit for 15-20 minutes before she would have to stand up to relieve the pressure on her back. (T. 326). However, once up she could not stand for very long. (*Id.*). She had to lay down at least once every day to relieve her pain. (T. 326, 338). Her back pain also affected her sleep, and her ability to independently attend to her personal care. (T. 327-31). Plaintiff participated in some physical therapy in 2016, however she stopped going because it was too painful. (T. 342-43). She also treated with pain management and received epidural steroid injections in the past, however she testified that she could not receive any more, due to a cortisone allergy. (T. 336). She also underwent "ablations." (T. 336-37). Her back condition affected her ability to engage in activities she once enjoyed, such as gardening, boating, fishing, and bowling. (T. 337-38).

Plaintiff also suffered symptoms from "a lot of mental issues," including social anxiety, depression, and panic attacks. (T. 322). Her mental health affected her ability to work even prior to her back injury. (T. 332-34). Plaintiff testified that her symptoms had become progressively worse over the years. (T. 322-23). She treated with both medication and counseling. (T. 323-24).

## IV.   **THE ALJ'S DECISION**

After finding that plaintiff had not engaged in substantial gainful activity

("SGA") since her original onset date of August 1, 2016, the ALJ found that plaintiff

had the following severe impairments at step two of the sequential analysis: lumbar

spondylosis, lumbar facet arthropathy, asthma, anxiety disorder, and depressive

disorder.  (T. 18-19).  At step three of the sequential evaluation, the ALJ found that

plaintiff did not have an impairment or combination of impairments that met or equaled

the severity of a listed impairment.  (T. 19-20).

At step four the ALJ determined that the plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform
> unskilled, light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except the claimant requires a sit/stand option at
> will, but would remain on task during the sit/stand period; can
> perform occasional stooping and crouching; can never kneel
> or crawl; should avoid concentrated exposure to dust, fumes,
> gases, and other pulmonary irritants; and is limited to a low
> stress work environment, which is defined as simple, routine,
> repetitive tasks with basic work-related decisions; rare
> changes in the workplace setting, occasional interaction with
> the public; and frequent interaction with co-workers and
> supervisors.

(T. 20).

Based on the above RFC, the ALJ found that plaintiff could not perform her past

relevant work.  (T. 24-25).  However, at step five, using the Medical Vocational

Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was

"capable of making a successful adjustment to other work that exists in significant

numbers in the national economy."  (T. 25).  Thus, the ALJ found that plaintiff was not

disabled.  (*Id.*).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of her position that the ALJ's

decision is not supported by substantial evidence:

1.   The ALJ failed to adequately weigh the opinion evidence concerning plaintiff's physical and mental health.  (Plaintiff's Brief ("Pl.'s Br.") at 14-18, 19-21) (Dkt. No. 9).

2.   The ALJ erred in his assessment of plaintiff's subjective complaints. (Pl.'s Br. at 18-19).

Defendant contends that the ALJ properly evaluated the medical evidence, along with

plaintiff's subjective statements, and that the Commissioner's decision is supported by

substantial evidence. (Defendant's Brief ("Def.'s Br.") at 16-25) (Dkt. No. 12).  For the

following reasons, this court finds that the ALJ's physical RFC determination was not

supported by substantial evidence in the record, and remand is therefore warranted.

## DISCUSSION

## VI.   RFC/WEIGHT OF THE EVIDENCE/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular

and continuing basis" means eight hours per day, for five days per week, or an

equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL

252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d

Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No.

5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018);

*Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*,

200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.

§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.

Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions

plaintiff is capable of performing, and may not simply make conclusory statements

regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267

(N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*,

728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Stephens v.

Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*,

307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a

narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No.

3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing

SSR 96-8p, 1996 WL 374184, at *7).

### 2.      Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act.  *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the

four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.    Application

In support of her contention that the ALJ's physical RFC determination is not supported by substantial evidence, plaintiff argues that the ALJ's evaluation of the opinion evidence was legally insufficient.  (Pl.'s Br. at 19).  In rendering his decision, the ALJ considered the medical opinions of state agency medical consultant R. Pradhan, M.D.; consultative examiner Joseph Prezio, M.D.; and plaintiff's primary care provider Joyce Bitran, D.O.  (T.  24).  For the reasons set forth below, the court agrees that the ALJ's consideration of the opinion evidence concerning plaintiff's physical health was deficient, and resulted in a physical RFC that is not supported by substantial evidence.

As previously set forth, the ALJ received opinion evidence concerning plaintiff's

physical limitations from both non-examining and examining sources.  On March 16,

2017, plaintiff underwent a consultative examination with internist Dr. Prezio.  (T. 772-

776).  After taking plaintiff's social and medical history, Dr. Prezio conducted a

physical examination.  Dr. Prezio noted that plaintiff was "in acute distress and

emotionally labile throughout the entire exam."  (T. 773).  Plaintiff was unable to walk

without assistance.  (*Id*).  She could not walk on her heels and toes, and could not stand

on them.  Her squat was "almost 0 with the back pain she is having," and "trying to rise

from the chair was extremely difficult."  (*Id.*).  Plaintiff did not change for the

examination and could not get onto the exam table.  (*Id.*).  Dr. Prezio further noted

plaintiff's restricted range of motion in her lumbar spine – showing flexion at 10

degrees and extension "0 degrees remaining in a 10 degree position."  (T. 774).

Plaintiff exhibited point tenderness in the lower lumbar spine extending over into the

right sacroiliac joint, which reproduced pain going down to the right knee.  (*Id.*).

Straight Leg Raise test "as best could be accomplished standing was negative."  (*Id.*).

Plaintiff's neurological exam was unremarkable, and she exhibited full strength in the

upper and lower extremities.  (*Id.*).  Dr. Prezio diagnosed plaintiff with low back pain

"with possible herniated degenerative disc disease in the lower back complicated by a

weight overload."  (T. 775).  His prognosis was guarded.  (*Id.*).

> Dr. Prezio provided a medical source statement in conjunction with his

examination findings.  He concluded:

> Based on the currently physical examination alone taking it at
> face value, this claimant has marked limitations with respect to
> engaging in any prolonged standing, walking, squatting, kneeling,
> bending, doing any heavy lifting, or carrying objects of any

> significant weight.  The medication list is quite substantial.  I urge
> the claimant to review this again with her [primary care provider].
> It should be noted that the claimant has not had a response to pain
> management to date[,] which includes medication and injections.

(*Id.*).

Four days later, state agency medical consultant Dr. Pradhan prepared a physical

residual functional capacity assessment in conjunction with the agency's initial disability

determination.  (T. 384-86, 399-401).  Upon review of the record before him, including

Dr. Prezio's opinion, Dr. Pradhan opined that plaintiff had the physical capacity to

occasionally lift 20 pounds, frequently carry 10 pounds, stand or walk for about 6 hours

in an 8-hour work day, and sit for about 6 hours in an 8-hour work day.  (T.  384, 399).

He opined that plaintiff's postural limitations were "limited to occasionally due to

limited [range of motion] of lumbar spine and right leg pain."  (T. 384-85, 399-400).

Last, Dr. Pradhan concluded that plaintiff had environmental limitations due to her

reported asthma.  (T. 400).

Dr. Pradhan stated that his opinion was based on his review of "all objective and

subjective findings" in the record before him.  In a section of his opinion entitled "RFC -

Additional Explanation," Dr. Pradhan highlighted various, apparently inconsistent

reports from plaintiff's treatment providers in the six months following her back injury.

(T.  400-01).  For example, Dr. Pradhan identified one occasion that plaintiff presented

for treatment with a smooth, coordinated gait, and another during which plaintiff

exhibited a cautious, slow, antalgic gait.  (*Id.*).  Dr. Pradhan also identified one instance

wherein plaintiff exhibited full range of motion, but he noted that several months later she exhibited significant restrictions. (*Id.*). He pointed to one treating source's indication that plaintiff had produced exam results "not consistent with her malingering behavior." (*Id.*). Last, Dr. Pradhan acknowledged plaintiff's limited range of motion as identified by Dr. Prezio at her recent consultative exam. (*Id.*). Dr. Pradhan concluded that plaintiff's presentation at the consultative examination was "not supported by evidence in file." (*Id.*).

Finally, the record contains an April 12, 2018 opinion from Dr. Bitran, plaintiff's primary care physician at the time.[2] (T. 847). In the mostly check-box form, Dr. Bitran opined that plaintiff was limited to sitting for no more than 5 hours in an 8-hour workday, standing for no more than 3 hours in an 8-hour workday, and walking for no more than 1 hour in an 8-hour workday. (*Id.*). She further concluded that plaintiff's disability required her to change positions often between sitting, standing and lying at irregular intervals to relieve pain. (*Id.*). According to Dr. Bitran, plaintiff's condition also required her to lie down periodically throughout the day. (*Id.*). She opined that plaintiff could lift and carry no more than 5 pounds. (*Id.*). Dr. Bitran opined that plaintiff was not able to work a full 8 hour day, and that she would miss 4 days a month

---

[2]The record reflects that plaintiff received primary care from nurse practitioner ("NP") Ann Kelchin in 2016 and 2017. On February 16, 2018, plaintiff transferred her primary care to Dr. Bitran, a physician within the same practice. (T. 45-49). Dr. Bitran examined plaintiff on three separate occasions between February and April 2018, prior to issuing her opinion regarding plaintiff's physical limitations.

from work as a result of her ongoing symptoms.  (*Id.*).  Last, Dr. Bitran concluded that plaintiff's pain was "marked," defined as a "severe restriction of pace, persistence, accuracy and the ability to concentrate – off task 25% or more of the time."  (*Id.*).

In his decision, the ALJ gave "significant" weight to the opinion of non-examining physician Dr. Pradhan, and adopted his findings in concluding that plaintiff maintained the functional capacity to perform light work as modified in the RFC determination.  (T. 24).  At the same time, the ALJ afforded "little" weight to, and ultimately rejected, the "marked" physical limitations opined by examining physicians Dr. Prezio and Dr. Bitran. (*Id.*).

With regard to a non-examining physician's opinion, "[t]he general rule is that 'the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Soto-Rivera v. Comm'r of Soc. Sec.*, No. 17-CV-6675, 2019 WL 2718236, at *3 (W.D.N.Y. June 28, 2019) (quoting *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990)); *Johnston v. Colvin*, No. 3:13-CV-00073, 2014 WL 1304715, at *33 (D. Conn. Mar. 31, 2014) (citing *Freegard v. Astrue*, No. 1:11–CV–12, 2011 WL 4915744, at *7 (D.Vt. Sept. 20, 2011)  ("[W]hile the findings of nonexamining analysts can, and often do, provide valuable supplemental support for an ALJ's decision, they should generally be afforded relatively little weight in the overall disability

determination.")

Notwithstanding the general rule, the opinion of a non-examining source may be credited over that of an examining physician under the proper circumstances. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record) (internal citation omitted); *Dronckowski v. Comm'r of Soc. Sec.*, No. 1:18-CV-27, 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (citing *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 336-37 (W.D.N.Y. 2018)).  However, the regulations also caution that "because non-examining sources have no examining or treating relationship with [a claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." *D'augustino v. Colvin*, No. 15-CV-6083, 2016 WL 5081321, at *2 (W.D.N.Y. Sep. 16, 2016) (citation omitted). It is incorrect for an ALJ to place significant weight on the findings of a non-examining source that differs from other medical evidence of record and is not adequately explained. *Id.* (citing *Frederick v. Barnhart*, 317 F. Supp. 2d 286, 298-99 (W.D.N.Y. 2004) (finding error where the ALJ relied primarily on the opinion of the non-examining, non-treating review physicians)).  Even where a non-examining opinion is afforded weight, it alone cannot be considered substantial evidence, nor can it constitute "good reason" for the limited weight given to a treating source opinion. *Walters v. Berryhill*, No. 3:16-CV-2113, 2018

15

WL 2926575, at *7 (D. Conn. June 11, 2018) ("Although inconsistency between a treating physician's and consulting physician's opinions can represent a sufficient inconsistency to justify not according binding weight to the treating physician's opinion . . . it would be circular to allow that same inconsistency, by itself, to determine the relative weight to be accorded the consulting and treating physicians' respective opinions. Such relative weighing decisions must rely on some external evidence or additional factors.") (internal citations and quotations omitted); *Seekins v. Astrue*, No. 3:11-CV-264, 2012 WL 4471264, at *4 (D. Conn. Sept. 27, 2012) (citing *Kahle v. Comm'r of Soc. Sec*., 845 F. Supp. 2d 1262 (M.D. Fla. 2012) ("The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician.")).

Here, the ALJ credited the opinion of a non-examining source over that of two examining sources,[3] both of whom opined that plaintiff had "marked" physical limitations. Thus, the legal sufficiency of the ALJ's evaluation turns on whether Dr. Pradhan's opinion is adequately supported by the other evidence of record, and whether the ALJ sufficiently explained his reasons for giving more weight to the opinion of a

---

[3]Plaintiff appears to concede that Dr. Bitran's opinion was not subject to the treating physician rule, in light of her limited treatment history with the plaintiff. (Pl.'s Br. at 20). Nevertheless, it is clear that Dr. Bitran examined plaintiff a handful of times before issuing her April 2018 opinion. Furthermore, in light of plaintiff's ongoing treatment with the same practice, the court finds it likely that Dr. Bitran had the benefit of reviewing plaintiff's history with NP Kelchin prior to assuming the role of plaintiff's primary care provider and providing a medical opinion. The ALJ did not discuss these factors in his evaluation of the opinion evidence.

non-examining expert than those of two experts who had the opportunity to physically examine the plaintiff.  With respect to the later requirement, the ALJ's stated reason for affording the most weight to Dr. Pradhan's opinion – "[h]is opinion is supported by his review of the record" – provides little insight into the ALJ's consideration of the conflicting evidence.  (*Id.*).  In the face of this vague and conclusory statement, the court assumes that the ALJ is referring to Dr. Pradhan's summary of random, unspecified medical reports during the period between August 2016 and January 2017.  (T.  400-01).  While some of these reports indicate unremarkable findings upon physical examination, Dr. Pradhan also acknowledged others which reflect a significant limitation in plaintiff's lumbar spine range of motion, along with an abnormal gait.  (*Id.*).  There was otherwise no attempt by Dr. Pradhan's to reconcile the conflicting evidence, or to provide support for his assertion that plaintiff's presentation at the consultative examination was inconsistent with the medical evidence.   Accordingly, there is nothing in the "review of the record" provided by Dr. Pradhan that adequately supports his, and ultimately the ALJ's, rejection of Dr. Prezio's restrictive opinion.

The ALJ's deficient evaluation of the examining physicians' opinions further precludes the court from upholding the Commissioner's disability determination.  In his decision, the ALJ stated that he afforded the opinion of consultative examiner Dr. Prezio "little" weight, because "it is based on the [plaintiff's] subjective complaints."  (T.  24).  On the contrary, Dr. Prezio's opinion that plaintiff had "marked" limitations was based

on his physical examination of the plaintiff, including his observation of plaintiff's mobility and an assessment of her lumbar range of motion.  (T.  774).  Dr. Prezio specifically qualified his opinion to be based on "the current physical examination alone[,] taking it at face value." (T. 775).  To the extent the ALJ considers Dr. Prezio's assessment of plaintiff's range of motion to be based on subjective evidence, this is inconsistent with his reliance on other range-of-motion examinations to minimize plaintiff's allegations of disability.  In any event, the ALJ provided an insufficient basis for discrediting Dr. Prezio's opinion for "marked" limitations, and "any explanation that [the ALJ] failed to provide cannot be supplied by the Commissioner post hoc." *Andino v. Saul*, No. 1:18-CV-00379, 2019 WL 4621878, at *5 (W.D.N.Y. Sept. 24, 2019) (citing *McKinstry v. Astrue*, 2012 WL 619112, *4 (D. Vt. 2012), aff'd, 511 Fed. App'x. 110 (2d Cir. 2013) ("[a] court must not engage in a post hoc effort to supplement the reasoning of the ALJ"); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("[a] reviewing court may not accept appellate counsel's post hoc rationalizations for agency action").

The ALJ's explanation for rejecting Dr. Bitran's opinion is similarly flawed.  In assigning her opinion "little" weight, the ALJ stated that Dr. Bitran "does not have a long treatment history with the claimant and the limitations do not match with the treatment of the claimant's prior primary care provider."  (T. 24).  As of the date of the ALJ's opinion, plaintiff had treated with Dr. Bitran on at least four different occasions over the span of six months.  Even assuming that Dr. Bitran did not have a "long

treatment history" with the plaintiff, those opportunities she did have to personally examine the plaintiff certainly outnumbered those of Dr. Pradhan, and was not a basis on which the ALJ could justify affording more weight to the non-examining physician. *See D'augustino v. Colvin,* 2016 WL 5081321, at *2-3 ("Assigning more weight to a non-examining expert than to an examining expert because the examining expert only met with the plaintiff once defies logic and is error.").

Moreover, the ALJ's blanket assertion that Dr. Bitran's opinion is inconsistent with plaintiff's prior primary care treatment is not clear from the record.  Plaintiff sought treatment from NP Kelchin approximately four days after her August 2016 fall.  (T. 627).  Upon examination, NP Kelchin noted that plaintiff exhibited tenderness and spasm across her lower back.  (T. 629-30).  She assessed plaintiff's low back as displaying a "full range of motion with caution."  (T. 629).  NP Kelchin diagnosed plaintiff with low back pain at multiple sites, and prescribed her three different medications to address her pain.  (T. 630).  NP Kelchin saw plaintiff again approximately two weeks later, where plaintiff complained of severe, worsening back pain in her lumbar spine.  (T. 634).  X-ray indicated mild scoliosis.  (T. 635).  At that time, NP Kelchin prescribed additional medication for plaintiff's muscle spasms and back pain, and referred her to physical therapy. (T. 638).  She also recommended that plaintiff wear a back brace for lifting. (*Id.*).  On September 1, 2016, plaintiff complained of an inability to bend over or get in and out of the car.  (T. 642).  The medication was helping her to feel better by the end of

the day.  (*Id.*).  She exhibited normal range of motion in her back, with tenderness and spasms present.  (T. 645).  NP Kelchin encouraged plaintiff to continue with her medication, physical therapy, and TENS unit.  (T. 646).  On September 28, 2016, plaintiff reported no improvement of her back pain, and complained of "10/10" pain if she coughed, sneezed, or moved the wrong way.  (T.  650).

On November 1, 2016, NP Kelchin examined plaintiff's back, finding tenderness along the lumbar spine and right buttocks.  (T. 665).  NP Kelchin noted plaintiff's decreased range of motion, with rapid alternating movements of the bilateral lower extremities.  (*Id.*).  Plaintiff saw NP Kelchin again on November 21, 2016, where she reported a decrease of symptoms with her medication.  (T. 667).  Upon examination, plaintiff exhibited tenderness and decreased range of motion in the lumbar spine.  (T. 670).  When plaintiff returned on December 12, 2016, she reported good relief after steroid injections, with continued limitations in turning, bending and lifting.  (T.  594).  NP Kelchin indicated that plaintiff's exam "doesn't match her malingering behavior." (T. 597).  On January 3, 2017, plaintiff reported pain with bending and standing for too long.  She reported current pain of 3/10, and stated that she was "able to paint [sic] kitchen."

The record reflects that plaintiff did not seek treatment from NP Kelchin specifically regarding her back condition after January 3, 2017, and as previously discussed her primary care was transferred to Dr. Bitran in February 2018.  However,

plaintiff was treating with both physical therapy and pain management between 2016 and 2018.  At her August 30, 2016 physical therapy evaluation, plaintiff described her pain as "feel[ing] like her muscles are being pulled away from her spine."  (T. 640).  She reported her worst pain at 10/10 with activity.  (*Id.*).  Upon physical examination, her trunk flexion and extension were "majorly limited."  (*Id.*).  After seven physical therapy sessions, plaintiff was noted to be making slow progress, with pain even from doing simple exercises.  (T. 654).  Physical Therapist (PT) Danielle Planch recommended an MRI.  (*Id.*).  On October 11, 2016, after approximately nine sessions, plaintiff was placed on hold from physical therapy due to the limited benefit it was providing.  (T. 655).

Plaintiff also routinely treated with Yusuf Tatli, M.D., for pain management.  At plaintiff's October 28, 2016 initial consultation, Dr. Tatli noted that she exhibited "moderate to severe" restrictions in her lumbar range of motion.  (T. 618).  Based on his examination of the plaintiff, Dr. Tatli scheduled plaintiff for right L4 and L5 medial branch blocks.  (*Id.*).  When plaintiff returned to follow up with Dr. Tatli after her procedure, she reported significant improvement within the first couple of weeks, however the pain was slowly returning.  (T. 620).  Dr. Tatli noted her moderate restrictions for lumbar range of motion and unsteady gait.  (*Id.*).  He scheduled plaintiff for a caudal epidural steroid injection.  (T. 621).  Plaintiff received additional medial branches and steroid injections in May, June, and October of 2017, and in March and

August of 2018.  (T.  58, 92, 796, 798, 799-803).  She also underwent several

radiofrequency ablations.  (T. 58, 799, 802).

Based on the aforementioned evidence, which does not overwhelmingly indicate

that plaintiff was less limited than opined by Dr. Bitran, and without further explanation

or analysis by the ALJ, the court cannot accept his general allegation of an inconsistent

treatment history as a legally sufficient basis for discrediting Dr. Bitran's examining

opinion over that of Dr. Pradhan. *See Coleman v. Berryhill*, No. 16-CV-6756, 2018 WL

4177939, at *3 (W.D.N.Y. Aug. 30, 2018) ("The ALJ's rationale that Dr. Gawinski's

opinion was inconsistent with the treatment notes is difficult to evaluate because he did

not cite to <u>any</u> specific records that were inconsistent."); *Trankle v. Berryhill*, No.

16-CV-846, 2017 WL 5988046, at *4 (W.D.N.Y. Dec. 4, 2017) ("[T]he ALJ's

conclusory assertion that [the treating physician's] opinion is inconsistent with her

treatment notes . . . without more, does not constitute a good reason to discount that

opinion."); *Nix v. Astrue*, No. 07-CV-344, 2009 WL 3429616, at *9 (W.D.N.Y. Oct. 22,

2009) ("In terms of the ALJ's finding of inconsistencies with 'objective medical

evidence,' the ALJ commits legal error by failing to articulate the 'objective medical

evidence' with which these findings are inconsistent.").

Moreover, Dr. Pradhan lacked the opportunity to review Dr. Bitran's opinion, as

well as plaintiff's treatment records in the year and a half between March 2017 and the

ALJ's disability decision in September 2018, which arguably reflect an increase in the

severity of plaintiff's symptoms.  *See Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *8 (D. Vt. July 14, 2020) ("Naturally, if nonexamining agency consultants have reviewed only part of the record, their opinions "cannot provide substantial evidence to support the ALJ's [RFC] assessment if later evidence supports the claimant's limitations.").

In sum, remand is warranted in this matter because the ALJ did not adequately explain his reasons for giving more weight to the opinion of a non-examining expert than those of two examining experts.  As set forth above, the court finds that the reasons provided by the ALJ in his decision are arbitrary, and do not withstand scrutiny. Moreover, "because the ALJ discounted all the other [physical] health opinions, it appears that he relied on [Dr. Pradhan's] non-examining opinion as substantial evidence for the [physical] limitations in the RFC determination, which was improper." *Chhibber v. Comm'r of Soc. Sec.*, No. 18-CV-6039, 2018 WL 6321393, at *5 (W.D.N.Y. Dec. 4, 2018).  In light of the court's findings, it need not reach the merits of plaintiff's remaining arguments. This matter is remanded to the Commissioner for further proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings

consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.


Dated:   November 13, 2020

Andrew T. Baxter
U.S. Magistrate Judge